UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PATRICK SMALLWOOD,

                    Petitioner,

v.                                    Case No. 3:07-cv-545-J-33HTS

WALTER A. MCNEIL,
et al.,

                    Respondents.
_____

### ORDER

### I. Status

Petitioner Patrick Smallwood, an inmate of the Florida penal system who is proceeding *pro se*, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) (hereinafter Petition) and Memorandum of Law in Support of Petition for Writ of Habeas Corpus (Doc. #2) (hereinafter Memorandum of Law) pursuant to 28 U.S.C. § 2254 on June 19, 2007. Petitioner Smallwood challenges a 2002 state court (Duval County, Florida) judgment of conviction for second degree murder, armed burglary and three counts of aggravated assault on the following grounds: (1) Petitioner was denied his right to a speedy trial contrary to the Sixth Amendment to the United States Constitution; (2) ineffective assistance of trial

counsel for failure to properly preserve his right to appeal the violation of his Sixth Amendment right to a speedy trial; (3) ineffective assistance of trial counsel for failure to properly advise him regarding the length of his sentences; (4) ineffective assistance of trial counsel for failure to ensure that a factual basis for Petitioner's plea was established on the record; (5) Petitioner's plea was not knowingly, voluntarily and intelligently entered, in violation of his Fourteenth Amendment right to due process of law; and (6) Petitioner was denied his Fourteenth Amendment right to due process of law when the trial court failed to inform him as to the nature and elements of the charged offenses.

Respondents have responded. See Respondents' Answer to Petition for Writ of Habeas Corpus (Doc. #13) (hereinafter Response). In support of their contentions, they have submitted exhibits.[1] Petitioner was given admonitions and a time frame within which to respond. See Court's Order to Show Cause and Notice to Petitioner (Doc. #7). Petitioner has responded. See Petitioner's Reply to Respondents' Answer to Petition for Writ of Habeas Corpus (Doc. #17). This case is now ripe for review.

---

[1] The Court will hereinafter refer to Respondents' exhibits, attached to their Response, as "Ex." See Exhibits to Answer to Petition for Writ of Habeas Corpus (Doc. #14).

## II. Procedural History

On April 26, 2001, Petitioner was charged with first degree murder, armed burglary and three counts of aggravated assault. Ex. A, Indictment.  On or about July 31, 2001, Petitioner, through counsel, filed a Petition for a Writ of Prohibition in the appellate court, claiming a violation of his right to a speedy trial pursuant to Fla. R. Crim. P. 3.191.  On August 29, 2001, the appellate court per curiam denied the Petition for a Writ of Prohibition.  Smallwood v. State, 793 So.2d 938 (Fla. 1st DCA 2001); Ex. K.

Thereafter, pursuant to a written plea agreement (Ex. B), on September 5, 2002, Petitioner entered pleas of guilty to the lesser included offense of second degree murder, armed burglary and three counts of aggravated assault.  Ex. C, Transcript of the September 5, 2002, Plea Hearing (hereinafter Plea Tr.).  Petitioner was sentenced to forty years of incarceration for the second degree murder, a lesser included offense of count one; forty years of incarceration for the armed burglary (count two), to run concurrently to count one; five years of incarceration for each aggravated assault (counts three, four and five), to run concurrently. Ex. B; Plea Tr. at 45, 50; Ex. D.      On or about October 7, 2002, Petitioner filed a *pro se* Motion to Withdraw Plea, in which he alleged that the plea was not made knowingly and voluntarily, that the trial court lacked subject matter

3

jurisdiction to allow him to enter the plea, that he did not understand that he gave up the right to appeal the speedy trial issue and that he thought that the forty years of incarceration would run concurrently with his previously imposed eight-year term of incarceration in Volusia County. Ex. E. On or about December 4, 2002, he filed a Supplement and Amendment to His Motion to Withdraw Plea. Id. On September 16, 2003, the court denied Petitioner's Motion to Withdraw Plea and Supplement and Amendment to His Motion to Withdraw Plea. Ex. F, Order Denying Defendant's Motion to Withdraw Plea.

Petitioner, proceeding *pro se*, initiated an appeal to the appellate court, filing a notice of appeal within thirty days of the judgment and sentence, as tolled by the pendency of the motions to withdraw the pleas. Ex. G. Petitioner filed an initial brief, raising the following claims: (1) the trial court committed reversible error by denying his motion to withdraw plea without properly conducting the proceedings in accordance with Fla. R. Crim. P. 3.170 by not appointing counsel or conducting an evidentiary hearing; (2) the trial court committed reversible error when it denied his motion to withdraw plea relying on the basis that the plea colloquy refuted his claims when said claims are external to the colloquy; (3) the trial court committed reversible error in denying his motion to withdraw plea because of the speedy trial issue stating he was never arrested for the instant charge.

4

Ex. H.  The State did not file an Answer Brief.  On December 10, 2003, the appellate court dismissed the appeal due to Petitioner's failure to comply with a prior order of the court, which had instructed him "to file conformed copies of the order(s) of the lower tribunal from which the appeal is being taken . . . ."  Ex. I.  Petitioner did not seek reinstatement of the appeal.

On September 23, 2004, Petitioner filed a *pro se* state Petition for Writ of Habeas Corpus, seeking a belated appeal in the appellate court and alleging that his trial counsel failed to timely file a notice of appeal as Petitioner had requested.  Ex. L. The State filed a Response to Order to Show Cause Why Belated Appeal Should Not Be Granted.  Ex. M.  On January 3, 2005, the appellate court relinquished jurisdiction to the trial court for an evidentiary hearing on Petitioner's entitlement to a belated appeal.  Ex. N.  Further, the appellate court directed the Chief Judge to appoint a special master to serve as a commissioner for the appellate court to conduct an evidentiary hearing and to issue a written order setting forth findings of fact and conclusions of law regarding Petitioner's entitlement to a belated appeal.  Id. An evidentiary hearing was conducted on February 25, 2005.  Ex. O, Transcript of the Evidentiary Hearing.

After the evidentiary hearing, the Special Master recommended that Petitioner's request for a belated appeal be denied.  Ex. P. The Special Master found "that while Petitioner may have requested

that Mr. Fallis undertake his appellate representation, Mr. Fallis did not agree to this request, and properly referred Petitioner to counsel who would have undertaken Petitioner's appellate representation." Ex. P at 4-5.  Petitioner filed a Response to the Special Master's Supplemental Report and Recommendation on Petition for Belated Appeal.  Ex. Q.  On July 14, 2005, the appellate court per curiam denied the Petition Seeking Belated Appeal on the merits.  Smallwood v. State, 908 So.2d 1062 (Fla. 1st DCA 2005); Ex. R.  On August 17, 2005, Petitioner's motion for rehearing was denied.  Ex. S.

During the pendency of the proceedings on the state habeas petition, Petitioner, on December 22, 2004, filed a *pro se* motion for post conviction relief pursuant to Fla. R. Crim P. 3.850, raising the following claims: (1) trial counsel was ineffective for misadvising Petitioner concerning the length of his sentence; (2) trial counsel was ineffective for failure to properly advise Petitioner concerning the elements of his offenses and any potential defenses supporting a viable defense; (3) trial counsel was ineffective for failure to preserve the issue of his speedy trial right; and (4) trial counsel was ineffective for stipulating to a factual basis where the trial court relied solely upon counsel's stipulation to a factual basis.  Ex. T.  On February 15, 2005, the court found that the Rule 3.850 motion was procedurally

barred as untimely in that it was filed more than two years after his conviction became final.  Ex. U.

Petitioner appealed.  Ex. V.  The appellate court per curiam affirmed the denial; however, on September 16, 2005, in consideration of Petitioner's motion for rehearing, the appellate court withdrew its prior decision, stating:

> Upon consideration of the appellant's motion for rehearing, we withdraw the original opinion and issue the following opinion.
>
> The appellant challenges the trial court's order denying his motion alleging ineffective assistance of counsel filed pursuant to Florida Rule of Criminal Procedure 3.850. Because the trial court improperly denied the appellant's first claim, that his counsel misadvised him of the length of his sentence, as untimely, we reverse its ruling. Although the trial court likewise erroneously denied the entire motion as untimely, all other issues are affirmed without further discussion because the claims were facially insufficient. See Robertson v. State, 829 So.2d 901, 906-07 (Fla. 2002).
>
> A timely motion to withdraw plea after sentencing pursuant to Florida Rule of Criminal Procedure 3.170 delays rendition of the final order imposing judgment and sentence until the trial court files a signed, written order disposing of the motion. Fla. R. App. P. 9.020(h); see Wofford v. State, 866 So.2d 774, 775 (Fla. 1st DCA 2004). Therefore, the appellant's timely motion to withdraw his plea delayed rendition of his judgment and sentence and the instant motion was timely filed within two years.
>
> The appellant's claim is facially sufficient: he alleges his counsel proffered misadvice about the length of his sentence and he would not have pled but for counsel's

7

> misadvice. <u>See</u> <u>Brazeail v. State</u>, 821 So.2d
> 364, 368 (Fla. 1st DCA 2002); <u>Ash v. State</u>,
> 767 So.2d 1260, 1261 (Fla. 1st DCA 2000).
>
> We, therefore, reverse the trial court's
> summary denial of the appellant's first claim
> and remand to address the claim on the merits
> or attach record portions conclusively
> refuting his claim. All other issues are
> affirmed without comment.

<u>Smallwood v. State</u>, 911 So.2d 849, 850 (Fla. 1st DCA 2005); Ex. W.

Thus, on remand, an evidentiary hearing was conducted on March 7, 2006. Ex. X, attached Exhibit I, Transcript of the Evidentiary Hearing (hereinafter EH Tr.). On June 27, 2006, the court denied the Rule 3.850 motion with respect to Petitioner's remanded claim, in which he alleged that his counsel misadvised him about whether his Duval County and Volusia County sentences would run concurrently and that had it not been for this misadvice, he would not have entered his plea, but would have proceeded to trial. Ex. X, Order Denying Defendant's Motion for Post Conviction Relief.

Petitioner appealed, and filed an Initial Brief. Ex. Y; Ex. Z. The State filed an Answer Brief, and Petitioner filed a Reply Brief. Ex. AA; Ex. BB. On February 28, 2007, the appellate court per curiam affirmed without issuing a written opinion. <u>Smallwood v. State</u>, 950 So.2d 1240 (Fla. 1st DCA 2007); Ex. CC. The mandate was issued on March 27, 2007. Ex. CC.

On May 3, 2007, Petitioner filed a *pro se* motion to correct an illegal sentence pursuant to Fla. R. Crim. P. 3.800(a), claiming that the forty-year sentence imposed for the offense of second

8

degree murder exceeds the maximum sentence allowed for him under the sentencing guidelines. Ex. DD. On June 7, 2007, the trial court denied the motion, stating:

> On September 2, 2002, the Defendant pled guilty in the instant case to the charge of Second Degree Murder as a lesser included offense of First Degree Murder. Pursuant to a valid plea agreement, the Defendant was sentenced to forty (40) years.
>
> The Defendant's claim is that his sentence is illegal in that he was sentenced to a term of incarceration in excess of the statutory maximum for the crime of Second Degree Murder for which he was sentenced. *See*, Davis v. State, 661 So.2d 1193 (Fla. 1995). The Defendant is under the misguided notion that his sentence for Second Degree Murder is beyond the statutory maximum. Furthermore, the sentence was imposed as part of an agreement to a reduced charge.

Ex. DD. Petitioner did not appeal. Response at 6.

The Petition (filed June 19, 2007, and signed June 18, 2007) is timely filed within the one-year period of limitation. See 28 U.S.C. § 2244(d); Court's Order (Doc. #11), filed February 12, 2008 (denying Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus As Untimely); Response at 7.

### III. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 127 S.Ct. 1933, 1940 (2007) (citation

omitted).   "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id.

This Court has carefully reviewed the record and concludes Petitioner is not entitled to an evidentiary hearing.   The pertinent facts of the case are fully developed in the record before the Court.   Smith v. Singletary, 170 F.3d 1051, 1054 (11th Cir. 1999).   Thus, the Court can "adequately assess [Petitioner's] claim[s] without further factual development."   Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).   Therefore, an evidentiary hearing will not be conducted by this Court.

### IV.  Standard of Review

Since this action was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA), April 24, 1996, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA.   Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), cert. denied, 535 U.S. 1104 (2002); Wilcox v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).   Under AEDPA, however, the review "is 'greatly circumscribed and highly

deferential to the state courts.' <u>Crawford v. Head</u>, 311 F.3d 1288, 1295 (11th Cir. 2002)." <u>Stewart v. Sec'y, Dep't of Corr.</u>, 476 F.3d 1193, 1208 (11th Cir. 2007).

The Eleventh Circuit has explained this deferential review:

> [Section] 2254(d) allows federal habeas relief for a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was: "(1) . . . contrary to, or involved an unreasonable[2] application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Marquard</u>, 429 F.3d at 1303. The phrase "clearly established Federal law," as used in § 2254(d)(1), encompasses only the holdings, as opposed to the dicta, of the United States Supreme Court as of the time of the relevant state court decision. <u>See Carey v. Musladin</u>, 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000)); <u>Osborne v. Terry</u>, 466 F.3d 1298, 1305 (11th Cir. 2006).

<u>Stewart</u>, 476 F.3d at 1208-09.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' §2254(e)(1)." <u>Schriro</u>, 127 S.Ct. at 1939-40 (footnote omitted).

---

[2] "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Schriro v. Landrigan</u>, 127 S.Ct. 1933, 1939 (2007) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000)).

This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003). See Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 545 U.S. 1142 (2005). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

## V. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted). The Eleventh Circuit captured the essence of an ineffectiveness claim:

> The clearly established federal law for ineffective assistance of counsel claims was set forth by the U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668, 104

> S.Ct. 2052, 80 L.Ed.2d 674 (1984). To
> establish a claim of ineffective assistance of
> counsel, first, "the defendant must show that
> counsel's performance was deficient . . .
> [which] requires showing that counsel made
> errors so serious that counsel was not
> functioning as the 'counsel' guaranteed the
> defendant by the Sixth Amendment." Id. at
> 687, 104 S.Ct. at 2064. Second, the defendant
> must show that counsel's deficient performance
> prejudiced him. Id. That is, "[t]he
> defendant must show that there is a reasonable
> probability that, but for counsel's
> unprofessional errors, the result of the
> proceeding would have been different. A
> reasonable probability is a probability
> sufficient to undermine confidence in the
> outcome." Id. at 694, 104 S.Ct. at 2068.

Gaskin v. Sec'y, Dep't of Corr., 494 F.3d 997, 1002 (11th Cir.

2007). "Establishing these two elements is not easy: 'the cases in

which habeas petitioners can properly prevail on the ground of

ineffective assistance of counsel are few and far between.'" Van

Poyck v. Florida Dep't of Corr., 290 F.3d 1318, 1322 (11th Cir.

2002) (per curiam) (citations and footnote omitted), cert. denied,

537 U.S. 812 (2002), 537 U.S. 1105 (2003).

The Eleventh Circuit stated:

> The Supreme Court has established certain
> principles and presumptions to guide our
> review of ineffectiveness claims under the
> flexible, case-specific standards of
> Strickland. We engage only in a "highly
> deferential" review of counsel's performance
> and "indulge a strong presumption that
> counsel's conduct falls within the wide range
> of reasonable professional assistance; that
> is, the defendant must overcome the
> presumption that, under the circumstances, the
> challenged action might be considered sound
> trial strategy." Strickland, 466 U.S. at 689,

104 S.Ct. at 2065 (quotation omitted).  As a result of this presumption, a petitioner must show "that no competent counsel would have taken the action that his counsel did take." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).  Thus, "where the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment." Id. at 1314 n. 15 (quoting Williams v. Head, 185 F.3d 1223, 1228 (11th Cir. 1999)). Moreover, because the standard is an objective one, trial counsel's admission that his performance was deficient "matters little." Id. at 1315 n.16.  We must also avoid "the distorting effects of hindsight" and evaluate the reasonableness of counsel's performance from the perspective of counsel at the time the acts or omissions were made.  Strickland, 466 U.S. at 689, 104 S.Ct. at 2065.

Jennings v. McDonough, 490 F.3d 1230, 1243-44 (11th Cir. 2007).

In Hill v. Lockhart, 474 U.S. 52, 58-59 (1985) (footnote omitted), the Court held:

that the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the Strickland v. Washington test is nothing more than a restatement of the standard of attorney competence already set forth in Tollett v. Henderson, supra, and McMann v. Richardson, supra.  The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Ineffective assistance of counsel may also require that a plea be set aside on the ground that it was involuntary because voluntariness implicates not only threats and inducements but also ignorance and incomprehension. See Hill v. Lockhart, 474 U.S. at 56 (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)) (noting that the "longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'").

> "A guilty plea is open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" Cuyler v. Sullivan, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980) (quoting McMann v. Richardson, 397 U.S. 759, 770, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970)); see Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S.Ct. 366, 370-71, 88 L.Ed.2d 203 (1985) (holding that, in the plea context, a habeas petitioner establishes ineffective assistance of counsel by demonstrating that counsel's advice and performance fell below an objective standard of reasonableness, based upon which he pled guilty). For a guilty plea to "represent an informed choice" so that it is constitutionally "knowing and voluntary," the "[c]ounsel must be familiar with the facts and the law in order to advise the defendant of the options available." Scott v. Wainwright, 698 F.2d 427, 429 (11th Cir. 1983). "The failure of an attorney to inform his client of the relevant law clearly satisfies the first prong of the Strickland analysis . . . as such an omission cannot be said to fall within 'the wide range of professionally competent assistance' demanded by the Sixth Amendment." Hill, 474 U.S. at 62, 106 S.Ct. at 372 (White, J., concurring) (quoting Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984)).

Finch v. Vaughn, 67 F.3d 909, 916 (11th Cir. 1995).

A federal habeas court reviews a state court guilty plea only for compliance with constitutional protections.

> This court has concluded that "[a] reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process:   If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." Stano v. Dugger, 921 F.2d 1125, 1141 (11th Cir.) (en banc), cert. denied, ___ U.S. ___, 112 S.Ct. 116, 116 L.Ed. 2d 85 (1991).

Jones v. White, 992 F.2d 1548, 1556-57 (11th Cir.), cert. denied, 510 U.S. 967 (1993).

Thus, in order for a guilty plea to be constitutionally valid, it must be made knowingly, intelligently, and voluntarily.  Pardue v. Burton, 26 F.3d 1093, 1096 (11th Cir. 1994).

> A guilty plea is an admission of criminal conduct as well as the waiver of the right to trial. Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970).  "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Id.; United States v. Fairchild, 803 F.2d 1121, 1123 (11th Cir. 1986) (per curiam).

> Reviewing federal courts "may set aside a state court guilty plea only for failure to satisfy due process." Stano v. Dugger, 921 F.2d 1125, 1141 (11th Cir.) (en banc), cert. denied, 502 U.S. 835, 112 S.Ct. 116, 116 L.Ed.2d 85 (1991).  "[W]hen it develops that the defendant was not fairly apprised of its consequences" or when "the defendant pleads

16

guilty on a false premise" in the prosecution's plea agreement, a guilty plea violates the Due Process Clause. <u>Mabry v. Johnson</u>, 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984). The Court has instructed that the "essence" of any promises that induce a guilty plea "must in some way be made known" to the defendant. <u>Santobello v. New York</u>, 404 U.S. 257, 261-62, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971).

For a guilty plea to be entered knowingly and intelligently, "'the defendant must have not only the mental competence to understand and appreciate the nature and <u>consequences</u> of his plea but he also must be reasonably informed of the nature of the charges against him, the factual basis underlying those charges, and the <u>legal options and alternative that are available</u>.'" <u>Stano</u>, 921 F.2d at 1142 (citation omitted) (emphasis added). Voluntariness implicates "[i]gnorance, incomprehension," and "inducements" as well as "coercion, terror" and "threats." <u>Boykin v. Alabama</u>, 395 U.S. 238, 242-43, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); <u>Stano</u>, 921 F.2d at 1141. Thus, "[i]gnorance of the consequences of a guilty plea may require its rejection." <u>Stano</u>, 921 F.2d at 1141 (citing <u>Boykin</u>, 395 U.S. at 243-44, 89 S.Ct. at 1712).

<u>Finch</u>, 67 F.3d at 914-15.

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Petitioner claims that he was denied his right to a speedy trial contrary to the Sixth Amendment to the United States Constitution. Petitioner states that he raised this claim in his Petition for Writ of Prohibition and that the appellate court denied the petition. Petition at 4; Ex. J; Ex. K. Respondents contend, and this Court agrees, that although

Petitioner raised alleged violations of speedy trial as a basis for relief in his state Petition for Writ of Prohibition (Ex. J) and utilized this claim in various state pleadings as a means to assert that his plea was involuntary (Ex. E) and that he received ineffective assistance of trial counsel (Ex. T), all were premised entirely upon an alleged violation of Fla. R. Crim. P. 3.191, not the United States Constitution.  Response at 10.

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state remedies.  See Castille v. Peoples, 489 U.S. 346, 349, reh'g denied, 490 U.S. 1076 (1989); Rose v. Lundy, 455 U.S. 509 (1982).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  Turner, 339 F.3d at 1281 (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999)). "This exhaustion doctrine 'is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts.'"  Turner, 339 F.3d at 1281 (quoting O'Sullivan, 526 U.S. at 845).

If a petitioner presents a federal claim in a federal habeas petition, he must have exhausted the same federal claim in state court rather than presenting the issue to the state courts in terms of trial court error or a violation of state law or procedure.

> To present a federal constitutional claim
> properly in state court, "the petitioner must
> make the state court aware that the claims

> asserted present federal constitutional issues." <u>Snowden v. Singletary</u>, 135 F.3d 732, 735 (11th Cir. 1998). "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." <u>Duncan v. Henry</u>, 513 U.S. 364, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995); <u>see also</u>, <u>Isaacs v. Head</u>, 300 F.3d 1232, 1254 (11th Cir. 2002) (Seriatim Opinions) (Opinion of Anderson J.). "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." <u>Anderson v. Harless</u>, 459 U.S. 4, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (citations omitted). "[T]o exhaust state remedies, petitioners must do more than present 'the state courts only with the facts necessary to state a claim for relief' and must additionally articulate the constitutional theory serving as the basis for relief." <u>Henry v. Dept. of Corr.</u>, 197 F.3d 1361, 1366 (11th Cir. 1999) (quoting <u>Gray v. Netherland</u>, 518 U.S. 152, 116 S.Ct. 2074, 2081, 135 L.Ed.2d 457 (1996)).

<u>Zeigler v. Crosby</u>, 345 F.3d 1300, 1307 (11th Cir. 2003) (per curiam), <u>cert</u>. <u>denied</u>, 543 U.S. 842 (2004). It would be futile for this Court to dismiss this unexhausted federal claim because it could have and should have been raised on direct appeal and motions for post-conviction relief are "neither a second appeal nor a substitute for appeal." <u>McCrae v. State</u>, 437 So.2d 1388, 1390 (Fla. 1983). Clearly, "[a] petitioner in Florida is not entitled to collateral relief 'based upon grounds which could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence.'" <u>Tejada v. Dugger</u>, 941 F.2d

1551, 1556 (11th Cir. 1991) (quoting Fla. R. Crim. P. 3.850(c)), cert. denied, 502 U.S. 1105 (1992).

Accordingly, Petitioner's claim has been procedurally defaulted. "Procedural defaults in state courts will foreclose federal court review, absent a showing of cause and prejudice." Parker v. Sec'y for the Dep't of Corr., 331 F.3d 764, 770 (11th Cir. 2003) (citing Wainwright v. Sykes, 433 U.S. 72 (1977)), cert. denied, 540 U.S. 1222 (2004). "[A] federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice." Fortenberry v. Haley, 297 F.3d 1213, 1222 (11th Cir. 2002) (per curiam) (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986)), cert. denied, 538 U.S. 947 (2003). The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), cert. denied, 535 U.S. 926 (2002).

Petitioner has not shown both cause excusing the default and actual prejudice resulting from the bar. Furthermore, he has not shown that he is entitled to the fundamental miscarriage of justice exception. Thus, the Court need not address Petitioner's procedurally barred federal claim.

To the extent that Petitioner may be attempting to raise, in ground one, the same claim he presented in his state Petition for Writ of Prohibition, such a claim presents an issue of purely state

law that is not cognizable on federal habeas review.  The purpose of a federal habeas proceeding is review of the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States.[3]  Coleman v. Thompson, 501 U.S. 722, reh'g denied, 501 U.S. 1277 (1991).

The Eleventh Circuit has stated that only in cases of federal constitutional error will a federal writ of habeas corpus be available.  See Jones v. Goodwin, 982 F.2d 464, 471 (11th Cir. 1993); Krasnow v. Navarro, 909 F.2d 451, 452 (11th Cir. 1990).  The Supreme Court has often held that federal habeas relief does not lie for errors of state law.  Clearly, it is not the province of a federal habeas court to reexamine state-court determinations on issues of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'"  Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) (quoting Willeford v. Estelle, 538 F.2d 1194, 1198 (5th Cir. 1976)).

---

[3] A federal district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §2254(a).

Even assuming *arguendo* that Petitioner properly exhausted the federal claim in the state courts,[4] the claim is without merit for the reasons stated by the Respondents.  <u>See</u> Response at 12-14; Ex. F, Order Denying Defendant's Motion to Withdraw Plea, filed September 16, 2003, at 28-32; Ex. F, Hearing on the Notice of Expiration of Speedy Trial, dated July 19, 2001, at 144-46. Petitioner's insistence that he was arrested in the instant case on May 11, 1999, while serving a separate judgment and sentence in Volusia County, Florida, is directly contrary to a specific, supported factual finding of the trial court, made following an evidentiary hearing: that he was not arrested until after his return to Duval County, Florida, in February of 2001.  Ex. F at 30-31, 144-46.

In addressing Petitioner's Motion to Withdraw Plea (Ex. F), the trial court stated:

> In Defendant's second claim he asserts that the Court lacked subject matter jurisdiction over him because the time allowed for his right to a speedy trial pursuant to Florida Rule of Criminal Procedure 3.191 had expired.  Initially, this Court notes that counsel filed a Motion to Dismiss the Information based upon Defendant's belief that he was arrested by Duval County in May 1999 for purposes of Florida Rule of Criminal Procedure 3.191 and therefore the speedy trial provisions would have expired by the time the information was issued.  At the hearing held

---

[4] To the extent that the state courts adjudicated the federal constitutional issue on the merits, this ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.  Ex. K; Ex F.

on July 19, 2001, testimony was taken from Defendant, Jacksonville Sheriff's Office (JSO), Detective Lonnie Mills, Assistant State Attorney Angela Corey and JSO dispatcher Jim Goodbread.  Defendant testified that he was arrested and booked by Volusia County officials for the murder he committed in Duval County (Exhibit D page 13).  Detective Mills testified that Defendant was never told, while incarcerated in Volusia County, that he was under arrest for crimes in Duval County and that he did not execute the Duval County arrest warrant until Defendant was transported to Duval County on February 12, 2001 (Exhibit D pages 48-53).[5]  Further, Mills testified that he merely initiated the process of issuing a detainer on Defendant after Defendant's arrest warrant was issued (Exhibit D pages 50-51).  Mrs. Corey testified that she instructed Detective Mills to only to [sic] lodge a detainer on Defendant (Exhibit D page 40).  Both Detective Mills and Mrs. Corey testified that neither had instructed the Volusia County officials to arrest Defendant for the Duval County offenses (Exhibit D pages 39-52).  Further, Mr. Goodbread testified to the authenticity of the detainer on Defendant he sent to Volusia County.  (Exhibit D page 56).  Based on this testimony, on July 20, 2001, the Court denied the Motion to Dismiss (Exhibit F).

The Florida Supreme Court has held that a detainer placed by one county for a prisoner held by another county is not considered custody for purposes of the speedy trial rules. State v. Bassham, 352 So.2d 55 (Fla. 1977); Adams v. State, 780 So.2d 955 (Fla. 4th DCA 2001); Edwards v. Allen, 603 So.2d 514 (Fla. 2d DCA 1992).  According to Bassham and its progeny because Defendant merely had a detainer lodged against him by Duval County and was therefore not arrested or taken into custody by Duval County, the speedy trial provisions of Florida Rule of Criminal Procedure 3.191 would not yet apply.  This

---

[5] Ex. F at 102-107.

> Court found that Duval County officials merely
> lodged a detainer with Volusia County and did
> not execute the arrest warrant as to Defendant
> until after his February 12, 2001, transport
> to Duval County.  Likewise, neither Mills nor
> Corey's interactions with Defendant amounted
> to an arrest.  This Court further found the
> fact that the Duval County arrest warrant was
> not sent to Volusia [was] another strong
> indicator that an arrest did not occur.
> Because Defendant's Motion to Dismiss was
> properly denied, this Court finds Defendant's
> second claim without merit.

Ex. F at 30-31.

Further, as reflected in the record now before this Court, Petitioner was not charged in the instant case until an Information was filed on March 2, 2001.  Ex. A, Information.  Thereafter, on April 26, 2001, Petitioner was charged by Indictment.  Id., Indictment.  In addition to ongoing discovery and other pretrial preparation, the circuit court docket reflects that the defense filed a motion to continue, which was granted on August 13, 2001. Ex. FF at 6.[6]  Accordingly, for all of the above-stated reasons, Petitioner is not entitled to relief with respect ground one.

---

[6] Under the speedy trial provision of Fla. R. Crim. P. 3.191(a), every defendant charged with a felony in Florida is required to be brought to trial within 175 days of arrest.  A defendant's request for a continuance waives his right to a speedy trial.  Randall v. State, 938 So.2d 542, 544 (Fla. 1st DCA 2006). "This waiver applies even in situations in which the attorney requests the continuance without consulting the defendant or against the defendant's wishes."  Id. (citations omitted).

### B. Ground Two

As ground two, Petitioner claims his trial counsel (Mr. Thomas Fallis) was ineffective for failure to properly preserve his right to appeal the violation of his Sixth Amendment right to a speedy trial.  Respondents claim that this ground is procedurally barred; however, this Court is not so convinced.  Petitioner raised this ineffectiveness claim in his Rule 3.850 motion (as ground three), and the post conviction court denied the Rule 3.850 motion as untimely.  Ex. T; Ex. U.  On appeal, the appellate court, in considering Petitioner's motion for rehearing, stated that the post conviction court "erroneously denied the entire motion as untimely," but affirmed without further discussion because the claim was facially insufficient.  Ex. W.  This Court concludes that Petitioner has sufficiently exhausted this claim in state court.

This Court finds this ground to be without merit.  In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence.  The presumption that counsel's performance was reasonable is even stronger since he is an experienced criminal defense attorney.[7]

---

[7] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger."  Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc), cert. denied, 531 U.S. 1204 (2001); see Williams v. Head, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney), cert. denied, 530 U.S. 1246 (2000).  Mr. Thomas G. Fallis was admitted to the Florida Bar in 1987 and is a member of the criminal law section of the Florida Bar.  See http://www.floridabar.org.  At the evidentiary hearing,

The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted).   Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose.  United States v. Freixas, 332 F.3d 1314, 1319-20 (11th Cir. 2003).  Here, counsel's performance was not deficient.  See Section VI. A., Ground One.

Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided.  As the post conviction court concluded:  "Had the Defendant proceeded to trial, he would have faced a life sentence on two of his charged counts, and possibly a death sentence on one of his charged counts, rather than the 40-year sentence he received in the instant case." Ex. X at 33-34; EH Tr. at 88-90. Thus, the ineffectiveness claim is without merit.  See Section VI. A., Ground One.

---

Mr. Fallis testified that he had practiced law for twenty years, focusing on both criminal and civil rights law.  EH Tr. at 86.

## C. Ground Three

As ground three, Petitioner claims trial counsel was ineffective for failure to properly advise him regarding the length of his sentences.  Specifically, he states that defense counsel explained to him that his eight-year prison term in Volusia County and his forty-year prison term in Duval County would run concurrently with each other and that Petitioner accepted the negotiated forty-year plea bargain based upon this information provided by counsel.  Memorandum of Law at 13.  As acknowledged by the parties, Petitioner raised this claim in his Rule 3.850 motion (as ground one).  Ex. T.  An evidentiary hearing was conducted on this claim on March 7, 2006, at which Petitioner and his former trial counsel, Thomas Fallis testified.  See EH Tr.  Petitioner was represented by counsel at the evidentiary hearing.  After the evidentiary hearing, the trial court identified the two-prong Strickland ineffectiveness test as the controlling law and stated in pertinent part:

> On September 5, 2002, pursuant to a written plea agreement with the State, the Defendant was convicted of Second Degree Murder (Count One), Armed Burglary (Count Two), and three counts of Aggravated Assault (Counts Three, Four, and Five). The Defendant was sentenced to concurrent terms of forty (40) years of incarceration as to Counts One and Two. As to Counts Three, Four, and Five, the Defendant was sentenced to concurrent terms of five (5) years of incarceration. (Exhibits "A," "B.") The Defendant was also granted three (3) years and 118 days jail credit for time served. (Exhibits "A," "B.")

The Defendant filed a Motion for Post Conviction Relief that the Court denied, and the Defendant appealed. (Exhibit "C.") The First District Court of Appeal initially affirmed the Order Denying the Defendant's Motion for Post Conviction Relief, but on the Defendant's Motion for Rehearing, the First District Court of Appeal reversed and remanded one of the Defendant's claims, while affirming the remainder of the Defendant's claims. (Exhibit "D.")

This Court now addresses the remanded claim, which is premised upon an allegation of ineffective assistance of counsel. In order to prevail on a claim of ineffective assistance of counsel, the Defendant must show that: (1) counsel's performance was outside the wide range of reasonable professional assistance, and (2) counsel's deficient performance prejudiced the defense, that is, that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland v. Washington, 466 U.S. 668, 687 (1984); Cherry v. State, 659 So.2d 1069, 1072 (Fla. 1995). Moreover, the "standard is reasonably effective counsel, not perfect or error-free counsel." Coleman v. State, 718 So.2d 827, 829 (Fla. 4th DCA 1998). A claim of ineffective assistance of counsel will warrant an evidentiary hearing only where the Defendant alleges "specific facts which are not conclusively rebutted by the record and which demonstrate a deficiency in performance that prejudiced the defendant." Roberts v. State, 568 So.2d 1255, 1259 (Fla. 1990). Further, "[t]o establish prejudice [a defendant] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Valle v. State, 778 So.2d 960, 965-66 (Fla. 2001). In the context of guilty pleas, the prejudice prong focuses on,

whether counsel's constitutionally
ineffective performance affected the
outcome of the plea process. In
other words, in order to satisfy the
'prejudice' requirement, the
defendant must show that there is a
reasonable probability that, but for
counsel's errors, he would not have
pled guilty and would have insisted
on going to trial.

Hill v. Lockhart, 474 U.S. 52, 59 (1985); see
Grosvenor v. State, 874 So.2d 1176, 1179 (Fla.
2004).

In his Motion, the Defendant avers that
trial counsel, Richard Fallis,[8] misadvised
him as to whether his Duval County and Volusia
County sentences would run concurrently, and
that had it not been for this misadvice, the
Defendant would not have entered his plea but
would have proceeded to trial. (Defendant's
Motion at 2-4.) On March 7, 2006, this Court
conducted an Evidentiary Hearing on the
Defendant's claim.

Initially, this Court finds it necessary
to explain how the Defendant's Duval County
convictions and Volusia County convictions are
related. On March 11, 1999, the Defendant and
codefendant, Dawn Wick, committed a series of
felonies, including an armed robbery in Duval
County, where the victim was shot and killed
by the Defendant. (Exhibits "E," "F.") The
Defendant and codefendant Wick then fled to
Volusia County where they committed other
crimes and were eventually apprehended by law
enforcement. (Exhibits "E," "F.")

At the Evidentiary Hearing on the
Defendant's Motion, the Defendant testified
that he first faced felony charges in Volusia
County, that he subsequently entered into a
plea agreement, and that he was convicted and

_____

[8] Trial counsel was Thomas George Fallis.  See EH Tr. at 86.
Petitioner's counsel at the Rule 3.850 evidentiary hearing was
Richard Adam Sichta.  Id. at 82.

sentenced to eight (8) years of incarceration. (Exhibits "G," "H," "I," pages 22-23, 30-31.) The Defendant then faced his Duval County charges, where the Defendant alleges he entered into a plea agreement believing he would be sentenced to forty (40) years of incarceration with his Duval County sentence to run concurrent with his Volusia County sentence. (Exhibits "B," "I," pages 23-24.) The Defendant also testified that he would not have pled to the 40 years had he known that the Duval and Volusia sentences would run consecutively, thus resulting in a total of 48 years of incarceration.[footnote] (Exhibit "I," page 24-25.)

> [Footnote] Neither the plea forms nor the judgments and sentences state whether the Defendant's sentences in Volusia County and Duval County would run concurrently or consecutively to one another. (Exhibits "G," "H," "I," pages 31-32.)

The Defendant testified that during a conversation with Mr. Fallis regarding whether the Defendant would take the 40-year offer, Mr. Fallis advised him that his Duval County sentence would run concurrent to his Volusia County sentence. (Exhibit "I," page[s] 24-25.) He also testified that during this conversation, Mr. Fallis told him about the State's proposal to have the Defendant waive his jail time credit, a proposal that interested neither the Defendant nor Mr. Fallis. (Exhibit "I," pages 13-14, 23-24.) The Defendant explained that this conversation took place in the "judge's chambers," which this Court later determined was the alternate jury room. (Exhibit "I," pages 24-25, 44-47.) He also testified that his sister, Beverly Smallwood, and his brother-in-law, Roger Harris, were present during this conversation. (Exhibit "I," pages 24-25, 42-44.)

At the Evidentiary Hearing, Roger Harris also testified that he and Beverly Smallwood were present during the Defendant's

conversation with Mr. Fallis regarding the plea offer. (Exhibit "I," pages 42-45.) Post-conviction counsel, Rick Sichta, asked Mr. Harris about this conversation:

> Mr. Sichta:   Do you recall what the plea offer was?
>
> [Harris]:   If I ain't mistaken, it was like 40 years all running concurrent.
>
> Mr. Sichta:   You say "all running concurrent"?
>
> [Harris]:   Mr. Smallwood, his biggest thi[ng] was about - was all his time was going to run concurrent.
>
> Mr. Sichta:   Does that include his Volusia County charges?
>
> [Harris]:   All I know is concurrent. I really can't say. I mean I'm not much for knowing the law.

(Exhibit "I," page 43.) Although Mr. Harris' testimony supports the fact that the conversation about the Defendant's plea offer took place and who was present during this conversation, Mr. [Harris]'s testimony does little to clarify whether the Defendant was told by Mr. Fallis that by accepting the plea offer of 40 years, that his Volusia County sentence would run consecutive [sic] to his Duval County sentence.

The Defendant's trial counsel, Mr. Fallis, also testified as to his recollection of the plea negotiations, including whether the State had made any offers in the case:

Other than death, yes. One time they came back - well, we were negotiating for at least a year, a year and a half. Originally, you know, there is no offer; we're going to get death. And then, okay, they would offer us life to a first [degree felony], which was rejected. And then that is where, I guess, we ran into a stalemate. And after that I started asking them to consider a second degree with a term of years. And we said, no, no, we wouldn't do that. We wouldn't do that.

As it got closer to trial, in fact the state did come back and eventually offered a 40-year sentence with all of the charges he had. He had some charges that were minimum mandatories and three-year, five-year minimum mandatories. And the agreement was that he would get 40 years, and all of his charges - I think there were five altogether - would run concurrent with each other as far as the Duval cases were concerned.

And that was an offer that I thought we couldn't refuse because in my opinion he was eligible for life if the jury didn't come back on death, but I think they needed aggravators for that. He'd be getting life on a first degree. If I was successful at trial in getting a second degree, he would get life on that too. And if he didn't get it on that and he was acquitted on that, there was an armed - I think a home-invasion armed robbery, which is another position for life.

So the 40-year sentence sounded reasonable or the best - not reasonable. I would have loved to see him get less than that, but probably the best we could have done

short of going to trial and perhaps
getting life or death.

(Exhibit "I," pages 8-10.)[9] Mr. Fallis had
several conversations with the Defendant and
the Defendant's family about the State's final
offer of 40 years, including on the day the
Defendant entered his plea, where Mr. Fallis
remembered some of the Defendant's family
members being present, including the
Defendant's sister. (Exhibit "I," pages 9-12,
19-20.)

Mr. Fallis also addressed the issue of
whether he told the Defendant that his Volusia
County and Duval County sentences would run
concurrently:

State:      What possibility, if any,
            was there that you could
            have communicated to Mr.
            Smallwood any idea in any
            way, shape, or form that
            his Duval County sentence
            would be running
            concurrent with his
            existing Volusia [County]
            sentence?

[Fallis]:   **To answer your question
            quite briefly, there is
            no way I would have told
            Mr. Smallwood that. And
            number two, if that were
            the - a condition, I
            would have put it right -
            I would have been sure to
            have put it right in the
            plea agreement, okay, and
            that's an important
            issue.**

State:      Have you had the
            opportunity to review the
            plea agreement recently?

---

[9] See EH Tr. at 88-90.

33

> [Fallis]: Yes, I have. I actually looked at it this morning - I mean this afternoon.
>
> State:    Was there anything in the plea agreement talking about a concurrency of charges with Volusia County?
>
> [Fallis]: No, because there was never an agreement.
>
> State:    And was there anything on the plea colloquy with Judge Dearing that talked about that?
>
> [Fallis]: No. We didn't address that in the plea colloquy with Judge Dearing[.]

(Exhibit "I," pages 17-18[10]; emphasis added.) Additionally, Mr. Fallis had no recollection of telling the Defendant's family that the Defendant's 40-year Duval County sentence would run concurrent to his Volusia County sentence. (Exhibit "I," pages 19-20.) Mr. Fallis also explained why there was no possibility that the Defendant's plea agreement could have included the Volusia County and Duval County sentences running concurrently:

> Sichta:   Did you have a discussion [with the State] about the Volusia County charges?
>
> [Fallis]: Yes, I did. As a matter of fact at one time Terry Phillips - or I think her name is something else right now, Honeywell or whatever - she was the prosecutor in the case.

---

[10] <u>See</u> EH Tr. at 97-98.

There was a time - and you asked me about offer[s] before. Yes, she said 40 years, but he would have to waive all of his credit time that he had, and he had like three years. And I said absolutely not. And I think I relayed that as well to Mr. Smallwood. But if I didn't, I just told her, no, that wasn't going to happen. But, actually, she was pretty adamant about not just the 40 years but, you know, to have - to waive the three years and change that he already had credit for. And I rejected - I just rejected that outright. I may have tried and spoke to Mr. Smallwood about it, but I remember that was - you know, I looked at her like, you know, you're crazy. I told her probably in those words.

(Exhibit "I," pages 13-14.)

        Having considered the record and the witness testimony at the Evidentiary Hearing, this Court specifically finds that Mr. Fallis' testimony was both more credible and more persuasive than the Defendant's allegations and testimony. Laramore v. State, 699 So.2d 846 (Fla. 4th DCA 1997). This Court finds that Mr. Fallis did not misadvise the Defendant that his Duval County sentence would run concurrently with his Volusia County sentence. The Defendant and Mr. Fallis had a number of conversations regarding plea negotiations over the course of a year to a year-and-a-half. (Exhibit "I," pages 8-10.) The Defendant acknowledged having the particular conversation where Mr. Fallis

presented the State's proposal that the
Defendant waive his jail time credit. (Exhibit
"H," pages 23-24.) It is inconceivable that
Mr. Fallis would have discussed only the
proposal of the waiver of the jail time credit
and would have failed to tell the Defendant
that if he accepted the State's proposal to
waive the jail time credit that he could serve
the Duval and Volusia sentences concurrently.
Notably, both the Defendant and Mr. Fallis
testified that they were unwilling to
entertain the State's proposal of waiving the
Defendant's more than three years of jail time
credit. (Exhibit "I," pages 13-14, 23-24.)
This Court notes that waiving the jail time
credit was the only way it appeared the State
was willing to agree that the Defendant could
serve his Duval and Volusia County sentences
concurrently. (Exhibit "I," pages 13-14.) This
Court also notes that the State likely took
such a hard stance in the plea negotiations
because had the Defendant proceeded to trial,
he would have faced a life sentence on two of
his charged counts, and possibly a death
sentence on one of his charged counts.
(Exhibit "I," pages 8-10; "J.")

Thus, based on the Defendant's and Mr.
Fallis' testimony at the Evidentiary Hearing,
in particular their testimony regarding the
conversation about the waiver of jail time
credit, and Mr. Fallis' testimony that there
is "no way" that he told the Defendant he
would serve his Duval and Volusia County
sentences concurrently, this Court finds that
Mr. Fallis did not misadvise the Defendant
regarding his plea in the instant case.
(Exhibit "I," pages 13-14, 17-18, 23-24.)
Accordingly, the Defendant has failed to show
that the [sic] Mr. Fallis committed error as
required by <u>Strickland</u>.

This Court also finds the Defendant's
claim that he would not have entered his plea
and would have proceeded to trial in the
instant case had he known that his Duval and
Volusia sentences would not be served
concurrently, to be lacking in credibility.
Had the Defendant proceeded to trial, he would

> have faced a life sentence on two of his
> charged counts, and possibly a death sentence
> on one of his charged counts, rather than the
> 40-year sentence he received in the instant
> case. (Exhibit "I," pages 8-10; "J.")
> Accordingly, the Defendant's claim is denied.

Ex. X at 26-32.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order. Accordingly, the claim was rejected on the merits by the state trial and appellate courts. Thus, there are qualifying state court decisions. This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

This Court also finds this ground to be without merit. After the evidentiary hearing, the state court resolved the credibility issue in favor of believing counsel's testimony over that of Petitioner. See Ex. X at 32. Further, the post conviction court found that "the Defendant's claim that he would not have entered his plea and would have proceeded to trial in the instant case had

37

he known that his Duval and Volusia sentences would not be served concurrently, to be lacking in credibility." Id. at 33. The Court notes that credibility determinations are questions of fact. See Martin v. Kemp, 760 F.2d 1244, 1247 (1985) (per curiam) (finding that factual issues include basic, primary, or historical facts, such as external events and credibility determinations). Petitioner has not rebutted the trial court's credibility finding by clear and convincing evidence. See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Given the trial court's credibility determination, it is clear that Petitioner's claim is wholly unsupported and therefore, the claim must fail.

### D. Ground Four

As ground four, Petitioner claims counsel was ineffective for failure to ensure that a factual basis for Petitioner's plea was established on the record. Respondents claim that this ground is procedurally barred; however, this Court is not so convinced. Petitioner raised this ineffectiveness claim in his Rule 3.850 motion (as ground four), and the post conviction court denied the Rule 3.850 motion as untimely. Ex. T; Ex. U. On appeal, the appellate court, in considering Petitioner's motion for rehearing, stated that the post conviction court "erroneously denied the entire motion as untimely," but affirmed without further discussion because the claim was facially insufficient. Ex. W. This Court

38

concludes that Petitioner has sufficiently exhausted this claim in state court.

This Court finds this ground to be without merit. In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence. The presumption that counsel's performance was reasonable is even stronger since Mr. Fallis, as previously noted, is an experienced criminal defense attorney. Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. Here, counsel's performance was not deficient.

The requirement that a factual basis be placed on the record in accepting a guilty plea is a matter of state law prescribed by Fla. R. Crim. P. 3.172(a).

> "Due process requires a court accepting a guilty plea to carefully inquire into the defendant's understanding of the plea, so that the record contains an affirmative showing that the plea was intelligent and voluntary." Koenig v. State, 597 So.2d at 258 (citing Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)); see also Fla. R. Crim. P. 3.170(k) ("No plea of guilty or nolo contendere shall be accepted by a court without the court first determining, in open court, with means of recording the proceedings stenographically or mechanically, that the circumstances surrounding the plea reflect a full understanding of the significance of the plea and its voluntariness and that there is a factual basis for the plea of guilty."); Fla. R. Crim. P. 3.172(a) ("Before accepting a plea of guilty or nolo contendere, the trial judge shall be satisfied that the plea is voluntarily entered and that there is a factual basis for it.").

Jones v. State, 885 So.2d 449, 452 (Fla. 1st DCA 2004).   The
purpose of determining whether a factual basis for a plea exists is
to ensure "'that the facts of the case fit the offense with which
the defendant is charged.'" Allen v. State, 876 So.2d 737, 740
(Fla. 1st DCA 2004); State v. Pelham, 737 So.2d 572, 573 (Fla. 1st
DCA 1999) ("The purpose of determining whether a factual basis for
a plea exists is to prevent a defendant from mistakenly entering a
plea to the wrong offense.").

At the September 5, 2002, plea hearing, the following exchange
occurred:

> THE COURT: All right.   And while I am
> aware of the factual basis, having heard
> several hearings in this case previously, will
> you stipulate to a factual basis?
>
> MR. FALLIS [DEFENSE COUNSEL]: Yes, Your
> Honor.

Plea Tr. at 49.  Thus, the trial judge found "from the record that
there is a factual basis to accept those pleas[.]"  Id. at 50.  In
Petitioner's sworn Rule 3.850 motion, he concedes that the prior
hearings to which the trial judge has referred were those held on
his state law speedy trial claim; however, he discounts them,
stating that "the hearings held before the entry of the instant
plea dealt solely with speedy trial issues and not the facts of the
charged offenses."   Ex. T at 11.   However, a factual basis
sufficient to satisfy the Florida requirement is readily found
within the record of the proceedings.  Ex. A, Indictment; Ex. F;
Ex. J.

Furthermore, in the written plea agreement, to which Petitioner attested under oath in open court at the plea hearing was true and correct, Petitioner acknowledged the following:

> I hereby enter my plea of guilty because I am guilty. Before entering such plea of guilty[,] I was advised of the nature of all the charges against me[,] the statutory offenses included within such charges[,] the range of maximum allowable punishments for each charge[,] all the possible defenses to each charge and all circumstances in mitigation of such charges. I have been advised of all other facts essential to a full and complete understanding of all offenses with which I have been charged, and of all offenses to which I am entering this plea. I have been advised of all direct consequences of the sentence to be imposed.

Ex. B, Plea of Guilty and Negotiated Sentence; Plea Tr. at 47-48. Finally, Petitioner acknowledged at the plea hearing that he understood he was pleading guilty to the lesser-included offense of second degree murder and the other four charges as they appeared in the Indictment. Plea Tr. at 48; Ex. A, Indictment.

Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown prejudice. Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided. As the post conviction court concluded: "Had the Defendant proceeded to trial, he would have faced a life sentence on two of his charged counts, and possibly a death sentence on one of his charged counts, rather than the 40-year sentence he received in the instant case."

41

Ex. X at 33-34; EH Tr. at 88-90.   Thus, the ineffectiveness claim is without merit.

### E. Ground Five

As ground five, Petitioner claims his plea was not knowingly, voluntarily and intelligently entered.   Respondents contend, and this Court agrees, that this claim is procedurally barred.   <u>See</u> Response at 24-25; Section VI. A., Ground One.   However, even assuming *arguendo* that this claim is not procedurally barred, the claim is without merit.   Response at 25-26.   At the plea hearing, the following dialogue occurred during the plea colloquy:

THE COURT[:] Did you read and understand everything on this form entitled Plea of Guilty and Negotiated Sentence?

THE DEFENDANT[:] Yes, sir[.]

THE COURT[:] Is this your signature on the bottom of the back page?

THE DEFENDANT[:] Yes, sir[.]

THE COURT[:] Is everything on this form true and correct?

THE DEFENDANT[:] Yes, sir[.]

THE COURT[:] Are you pleading guilty to these five charges because you are guilty? Actually, correction[,] Your plea of guilty as to count 1 is to the lesser-included offense of second-degree murder, but the other four charges [are] as they appear on the indictment?

THE DEFENDANT[:] Yes[.]

THE COURT[:] Do you understand that by pleading guilty you're giving up your right to

42

a trial, the right to remain silent, the right to present witnesses in your own behalf, the right to confront the witnesses against you, the right to require the state to prove these charges, and the right against self-incrimination?

THE DEFENDANT[:] Right, yes[.]

THE COURT[:] Has anyone threatened you, coerced you in any way, or promised you anything to cause you to enter this plea?

THE DEFENDANT[:] No[.]

THE COURT[:] Have you had enough time to discuss this case with your attorney?

THE DEFENDANT[:] Yes, sir[.]

THE COURT[:] And has your attorney been able to answer all of your questions for you?

THE DEFENDANT[:] Yes, sir[.]

THE COURT[:] Have you had enough time to think about these charges, any defenses you might have to them, and the consequences of this plea?

THE DEFENDANT[:] Yes, sir[.]

THE COURT[:] And do you understand that by entering the plea of guilty to these charges you are waiving your right to appeal any issue other than the sentence that the Court might impose?

THE DEFENDANT[:] Yes[.]

Plea Tr. at 47-49.  Thus, the trial judge found that the plea of guilty to the lesser-included offense of second degree murder in count one and to the other four offenses as charged in the Indictment was freely and voluntarily entered and that a factual basis existed to accept the pleas.  Id. at 49-50.

43

In denying Petitioner's Motion to Withdraw Plea, the trial court stated:

> This Court finds that Defendant acknowledged that he discussed his case and plea agreement with his attorney and he acknowledged that[,] by accepting a plea[,] his appeals would be limited to an appeal of his sentence[.] This Court further notes the language in Defendant['[]s written plea agreement[:]
>
>> My sentence has been negotiated in this case and I understand that it is as follows[:] I will be adjudicated guilty on count 1 to the lesser included charge of second degree murder and be sentenced to 40 years[.] On count 2[,] I will be sentenced to 40 years[.] [O]n count[s] 3[,] 4[,] 5[,] 5 years all with 3 year minimum mandatories[.] All my counts shall run concurrent with counts 1 and 2[.] I agree to a restitution order of $7000 to be issued[.] I will be given credit for 3 years and 118 days[.]
>
> (Exhibit C)[.] This Court does not find anything in the language of Defendant['[]s signed plea agreement that would lead Defendant to believe the sentences for his Duval County and Volusia County convictions would run concurrently[.] Accordingly[,] this Court finds that he knowingly and voluntarily agreed to the plea[.] A defendant may not seek to go behind his sworn testimony at a plea hearing in a post conviction motion[.] Stano v[.] State[,] 520 So[.]2d 278 (Fla[.] 1988)[;] Dean v[.] State[,] 580 So[.]2d 808 (Fla[.] 3d DCA 1991)[;] Bir v[.] State[,] 493 So[.]2d 55 (Fla[.] 1st DCA 1986[.] For the aforementioned reasons[,] this Court finds that Defendant['[]s first claim is without merit.

Ex. F at 29-30.[11]  Thus, based on the record before this Court, it is clear that Petitioner knowingly, voluntarily and intelligently entered his pleas of guilty.

### F. Ground Six

As ground six, Petitioner claims that he was denied his Fourteenth Amendment right to due process of law when the trial court failed to inform him as to the nature and elements of the charged offenses.  As acknowledged by Petitioner, "[t]his issue was not addressed in either a direct appeal or post-conviction proceeding."  Petition at 9.  However, he claims that "it constitutes 'plain error' and may be raised for the first time at any stage of the proceedings."  Id.  This is incorrect.  As argued by Respondents, this claim is procedurally barred from review in this Court.  Response at 26-28; see Section VI. A., Ground One. However, even assuming arguendo that this claim is not procedurally barred, the claim is without merit.

The record reflects that Petitioner was fully informed as to the nature and elements of the charged offenses.  Ex. B, Plea of Guilty and Negotiated Sentence; see Plea Tr.  In the plea agreement, he acknowledged that he was advised of the nature of all the charges.  Ex. B.  Further, the following dialogue occurred during the plea colloquy:

---

[11] To the extent that the state court adjudicated the federal constitutional issue on the merits, this ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.  Ex F.

THE COURT[:] Did you read and understand everything on this form entitled Plea of Guilty and Negotiated Sentence?

THE DEFENDANT[:] Yes, sir[.]

THE COURT[:] Is this your signature on the bottom of the back page?

THE DEFENDANT[:] Yes, sir[.]

THE COURT[:] Is everything on this form true and correct?

THE DEFENDANT[:] Yes, sir[.]

Plea Tr. at 47-48.

Although a defendant's statements during the plea colloquy are not insurmountable, the Supreme Court held in <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977), that "the representations of the defendant [at a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Here, based upon the record before this Court, Petitioner has not overcome this barrier.

For all of the previously-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.     The Clerk of the Court shall close this case.

**DONE AND ORDERED** in chambers in Jacksonville, Florida, this 22nd day of July, 2008.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

sc 7/17
c:
Patrick Smallwood
Ass't Attorney General of Record